## SANDERS *v.* W. B. WORTHEN CO.

### Opinion delivered January 24, 1916.

1. ACTIONS—TRANSFER TO LAW—WAIVER.—Although defendant asked the chancery court to transfer an action brought against him to law, he will be held to have waived his objection to the refusal of the court to order the transfer, where no order was entered of record overruling the motion to transfer the cause.

2. ACTIONS—TRANSFER TO LAW—EXCEPTIONS.—A recital in the transcript that the chancery court refused, upon motion, to transfer a cause of action to law, is insufficient to preserve the point on appeal.

3. BANKS AND BANKING—DEPOSIT OF CHECK—TITLE—INTENTION.—The rule that, when a check is taken to a bank and the bank receives it and places the amount to the credit of the customer, the title to the check is vested in the bank, is *prima facie* merely and yields to the intention of the parties, express or implied, from the circumstances.

4. BANKS AND BANKING—DEPOSIT OF CHECK—TITLE—INTENTION.—S. drew a check on the E. Bank, to the order of one O. O. deposited same in the appellee bank, on the afternoon that he received the same, and the check was credited to his account; appellee bank kept the check until the next morning, when it was carried to the clearing house in due course; before that time O. had checked the amount out in various small amounts, the appellee bank having no notice of any infirmities in the check. That day S. stopped payment on the check, and transferred his account in the E. Bank to one A., as trustee. *Held,* the chancellor was justified in finding that it was the intention of the parties that the title to the check should pass to appellee bank, when it received the check, and credited the amount to O's. account, and that appellee bank could recover the amount of same from S., out of the fund in the E. Bank.

Appeal from Pulaski Chancery Court; *Jno. E. Martineau,* Chancellor; affirmed.

STATEMENT BY THE COURT.

W. B. Worthen Company, a banking corporation organized under the laws of the State of Arkansas, instituted this action in the chancery court against Gladys G. Sanders, R. G. Ortagus, agent, J. A. Alexander, trustee, and the Exchange National Bank. The material allegations of the complaint are as follows:

That on March 31, 1915, Gladys G. Sanders drew a check for $500 payable to R. G. Ortagus, agent, or order, on the Exchange National Bank, of Little Rock, Arkansas; that at the time Gladys G. Sanders had an account in her name in the Exchange National Bank in the sum of something more than $1,000; that on April 2, 1915, Ortagus endorsed the check and deposited it to his account with W. B. Worthen Company, and the next morning drew out checks on his account aggregating the sum of $500; that on the same day, but later in the day, Gladys G. Sanders changed her account with the Exchange National Bank and placed it in the name of J. A. Alexander, trustee, and that she notified the bank not to pay the check and the bank refused to pay same.

The prayer of the complaint was that a temporary restraining order be granted restraining the Exchange National Bank from paying any check of the said J. A. Alexander, trustee, and that the latter be enjoined from making any disposition of the funds held in his name for Gladys G. Sanders and that on final hearing plaintiff have judgment against Gladys G. Sanders and Ortagus for the sum of $500, that Alexander be declared a trustee for Gladys G. Sanders and that the Exchange National Bank and Alexander, as trustee, be required to pay into the registry of the court a sufficient amount of the funds to pay the judgment against Gladys G. Sanders.

The cashier of the Exchange National Bank testified substantially as follows: I am familiar with the signature of Gladys Sanders and she signed the check for $500 payable to Ortagus; the $500 check came into the bank about 10 o'clock through the clearing house; each morning at 10 o'clock each bank checks up the other

banks; if Exchange National Bank has checks on Worthen Company and Worthen Company have checks on the Exchange National Bank the checks are exchanged if they are equal; if they are not equal then one owes the other the difference, which is paid; under the rules of the clearing house we have from 10 o'clock in the morning until 2 o'clock in the afternoon to return checks; within that time we received a request from Gladys G. Sanders not to pay the $500 check for the reason that it was a forgery; when we received the message not to cash the check we sent it back to Worthen Company and they sent our bank the money for it; on that day Gladys G. Sanders had an account in our bank in her own name for $1,114.53; after notifying our bank not to pay the check she came in on the same day and transferred her account to J. A. Alexander, trustee for Gladys G. Sanders.

Gordon N. Peay, president of W. B. Worthen Company, testified, in effect, as follows: The $500 check in controversy is dated March 31, 1915; Ortagus deposited it in our bank on the afternoon of April 2, 1915, and it was credited to his account and then went into the general clearing to be presented the following morning, as was the custom; on the following morning between 9 and 10 o'clock Ortagus drew checks in various small sums for five hundred dollars on his own account to cover his pay roll; our bank cashed the check for $500 by cashing the checks of Ortagus on his account and our bank is out that much money now; Ortagus has made no other deposits since that time and did not at the time have any funds to meet the checks given by him to cover his pay roll except the $500 check in controversy; I am an expert on signatures and from a comparison of the signature to the five hundred dollar check with the admitted signature of Gladys G. Sanders I find the signature to the five hundred dollar check is the genuine signature of Gladys G. Sanders.

Gladys G. Sanders testified in her own behalf and denied that she signed the check in question. She also testified as to the circumstances which induced her to give

the check to Ortagus but as these facts are not necessary to a decision of the issues raised by the appeal, they need not be stated here.

The chancellor found the issues in favor of the plaintiff, and decreed that plaintiff Worthen Company have and recover of Gladys G. Sanders the sum of $505.25 with accrued interest. It was further decreed that the Exchange National Bank and J. A. Alexander, trustee, pay into the registry of the court a sufficient amount of the funds on deposit with the bank to the credit of J. A. Alexander, trustee, to satisfy the judgment. Gladys G. Sanders and J. A. Alexander have appealed.

*Henry C. Riegler*, for appellants.

1. The chancery court was without jurisdiction, the remedy at law being full and complete. 5 Federal Stat. Ann., p. 188, § 5242 and p. 190, note 2; 177 U. S. 499; 189 Pa. St. 610; 42 W. N. C. (Pa.) 328; 5 Ark. 9; 34 *Id.* 354; 48 *Id.* 510; 82 *Id.* 330; 5 Enc. Dig. Ark. Rep. 694. The cause should have been transferred to the law court and submitted to a jury. 73 Ark. 462; 65 *Id.* 503. Even though the appellant had drawn the check, she had a legal right to stop payment. 118 Pa. 294; 138 Cal. 169; 31 Okla. 139. The drawing of a check is not an assignment of any part of the fund in the hands of the drawee. 27 Am. Rep. 55; 98 Ark. 1; 100 *Id.* 537; 48 N. Y. 682; 6 *Id.* 412; 57 Am. Dec. 466; 31 L. R. A. 519.

2. The answer of Ortagus was not verified. Appellant answered upon oath, denying the charges of appellee. Insofar the court is bound to accept as true the facts as to defendant Ortagus. 18 Ark. 214; 19 *Id.* 166; 24 *Id.* 410; 26 *Id.* 417.

3. Appellee is not a *bona fide* holder. Deposit of a check to account does not pass title to the bank. There must be some agreement to overcome the universal custom of banks that every deposit slip contradicts such acceptance except for collection at depositor's risk. 15 Fed. 675; 21 Am. Rep. 697; 50 Fed. 647; 150 U. S. 231; 7 L. R. A. (N. S.) 694.

3. Neither the law nor the evidence supports the judgment and the cause should be reversed and judgment entered here for appellants.

*Coleman & Lewis,* for appellee.

1. The chancery court had jurisdiction. This was a case of actual or constructive fraud. 14 Ark. 356; 70 *Id.* 189.

2. The account was changed with intent to defraud. The denial of her signature was an attempt to defraud. The jurisdiction of chancery to prevent fraud is clear and the mere fact of a remedy at law does not exclude chancery jurisdiction. 70 Ark. 189; 182 U. S. 478-81.

3. The decree should be affirmed. When a check is presented to a bank, and the bank receives it and places the amount to the credit of a customer, the title to the check vests in the bank. 101 Ark. 266; 119 Ark. 373. All the proof makes it beyond doubt that *she signed the check.*

HART, J., (after stating the facts). The defendant Gladys G. Sanders asked that the case be transferred from the chancery court to the circuit court and now assigns as error the action of the chancellor in failing to transfer the cause.

Under the record as presented we need not decide whether this cause was of equitable cognizance. Section 5991 of Kirby's Digest provides that an error of the plaintiff as to the kind of proceedings adopted shall not cause an abatement or dismissal of the action but merely a change into the proper proceedings by amendment in the pleadings and a transfer of the action to the proper docket.

Section 5993 of Kirby's Digest provides that such error is waived by failure to move for its correction at the time and in the manner prescribed in the statute and that such errors are waived unless excepted to at the time.

The record does not show any order of the court passing upon the motion of the defendant to transfer the cause from the chancery court to the circuit court

and under the sections of the statute above referred to the defendant will be deemed to have waived her motion.

The transcript does contain the following language: "It is agreed that the testimony shall be taken by a stenographer, the notes written and transcript used as depositions, same being taxed as costs. After reading the complaint of plaintiff by Mr. Lewis and reading the answers by Mr. Reigler a discussion arose between the attorneys for the defendants with the court as to its jurisdiction, the attorneys for defendants stating that plaintiff had an adequate remedy at law and no cause to enter this court. The court refused to transfer this cause, holding that it was within proper jurisdiction, to which defendants excepted."

(1) It was proper to agree that the testimony should be transcribed and used as depositions. The testimony of the witnesses, when transcribed, under the agreement, became a part of the record. The recital of the discussion between the attorneys for the defendant and the court did not become a part of the record. The subject of the record on appeal in chancery cases has been considered by this court in several cases. The case of *Rowe* v. *Allison,* 87 Ark. 206, cites many of our earlier cases on the subject and clearly points out what is necessary to bring matters into the record in chancery cases. Counsel for the defendants should have caused an order to be entered of record overruling the motion to transfer the cause to the circuit court. Such an order would have become a part of the record on appeal. Not having done so, defendants will be deemed to have waived their objections to the jurisdiction of the chancery court.

(2) The statement above refered to as appearing in the transcript is not even authenticated by the stenographer's certificate or by the certificate of the clerk; but even if it were, as above stated, that would be insufficient to make it a part of the record on appeal.

This brings us to a consideration of the case on its merits.

(3)   When a check is taken to a bank and the bank receives it and places the amount to the credit of the customer, the title to the check is vested in the bank.  The rule as stated is not an absolute rule but it is *prima facie* merely and yields to the intention of the parties, express or implied, from the circumstances.  *Southern Sand & Material Co.* v. *People's Savings Bank & Trust Co.,* 101 Ark. 266; *Arkansas Trust & Banking Co.* v. *Bishop,* 119 Ark. 373, 178 S. W. 422; *Fayette National Bank* v. *Summers,* 105 Va. 689, 54 S. E. 862, 7 L. R. A. (N. S.) 694, and case note.

(4)   Tested by this rule, the decision of the chancellor was not against the preponderance of the evidence and must be upheld on appeal.  The facts as disclosed by the record show that both banks are situated in the city of Little Rock and diagonally across the street from each other; that Ortagus deposited the check in question one afternoon and the check was credited to his account; that the bank kept the check until the next morning when it was carried to the clearing house in due course; that before that time Ortagus had checked the amount out in various small amounts to meet his pay roll; that the Worthen Company had no notice whatever of any infirmities in the check.

Under these circumstances, the chancellor was justified in finding that it was the intention of the parties that the title to the check should pass to the bank when it received it and credited the amount thereof to the account of Ortagus.

The chancellor was also warranted in finding that Gladys G. Sanders signed the check.  It is true that she denied signing it, but the record shows that she also denied signing another check made payable to Ortagus but afterwards admitted having signed it.  The assistant cashier of the Exchange National Bank testified that he knew her signature and that the signature to the check was her genuine signature; and the president of the Worthen Bank compared the signature to the check with the admitted genuine signature of Gladys G. Sanders

and testified that the signature to the check was the genuine signature of Gladys Sanders.

The decree is affirmed.